WILLIAM R. OSBORNE, *Executor, &c.,* v. J. W. YOUNG.

1. CASE-MADE; *Practice.* A judgment was rendered in favor of the defendant and against the plaintiff, and the plaintiff moved for a new trial; and some time afterward, the court overruled the motion for a new trial, and the plaintiff excepted; and afterward, and within one year after the motion for a new trial was overruled but not within one year after the judgment was rendered, the plaintiff took the case to the supreme court on petition in error. *Held,* That the supreme court may consider every question involved in the ruling and determination of the trial court in overruling the motion for the new trial.

2. CASE-MADE *as Evidence; Objection to, Overruled.* Where a "case-made" is introduced by the defendant in evidence, and the plaintiff objects, generally, for incompetency and irrelevancy, and the court overrules the objection, and it appears that while such "case-made" may have contained some things that were not competent and relevant as evidence, yet it also contained some competent and relevant evidence, *held,* that the court did not err in overruling the plaintiff's objection.

3. ———— *Immaterial Error.* Where a fact is conclusively proved, by competent evidence, it is immaterial error to admit other evidence, which is incompetent, to prove the same fact.

4. JUDGMENT, *Whether Sustained, Not Involved in Motion for New Trial.* In an action tried by the court without a jury, where the court makes special findings with regard to all the facts of the case, and renders judgment upon such special findings, and one of the parties moves for a new trial, which motion is overruled by the court, *held,* that the question whether the judgment is authorized and sustained by the special findings or not, is not involved in the determination of the court, on the motion for a new trial.

5. NEW TRIAL, *When Party Not Entitled to.* Where a motion is made for a new trial upon the ground of surprise, which ordinary prudence could not have guarded against, and the alleged surprise is with respect to the testimony of a certain witness, and it is not shown that such testimony is not true, or that it would be different upon a new trial, *held,* that the party is not entitled to a new trial upon such ground.

6. ———— Upon the facts of this case, *held,* that the findings of the court below, and the judgment rendered thereon, are correct.

*Error from Crawford District Court.*

ACTION brought by *William R. Osborne,* executor of Noah Ely, deceased, against I. G. Harlan, Mary Harlan, *J. W. Young,* and Frank Playter, to recover judgment upon a certain

49—28 KAS.

coupon promissory note given by I. G. Harlan to the plaintiff, and to foreclose a mortgage given by Harlan and wife to the plaintiff to secure the note. All the defendants except Young made default, and suffered judgment to be rendered against them, as prayed for in the plaintiff's petition. The defendant Young answered, setting up and claiming title in himself, paramount to the plaintiff's mortgage. To this answer the plaintiff replied, denying the averments of the answer, and also alleging new matter by way of defense to the claim set forth by Young in his answer. A trial was had between the plaintiff and Young upon these pleadings, before the court without a jury, and upon such pleadings and the evidence the court made the following findings, to wit:

"That the note, coupons and mortgage set forth in the petition of the plaintiff were given by the defendant I. G. Harlan, in consideration of a loan of money made by the plaintiff to the defendant I. G. Harlan; that the said mortgage was executed by the defendants I. G. Harlan and Mary Harlan, upon the 9th day of November, 1876, and was recorded in the office of the register of deeds of Crawford county, upon the 10th day of November, 1876, and that the said I. G. Harlan and Mary Harlan by the terms of said mortgage waived appraisement, and that the debt thereby accrued draws interest at ten per cent. per annum, and that there is now due from the defendant I. G. Harlan to the plaintiff, upon said note, coupons, and mortgage, the sum of nine hundred and twenty-nine ($929) dollars. And the court does further find that upon the tenth day of November, 1871, the defendants I. G. Harlan and Mary Harlan executed a mortgage upon the real estate mentioned in the petition, to one L. G. Holmes, which said mortgage is the mortgage referred to in the answer of the defendant J. W. Young, and that said mortgage was delivered upon the day executed, and recorded upon the eleventh day of November, 1871, in the office of the register of deeds of Crawford county; that said mortgage was afterward assigned by said Holmes to Robert Ecton, and that an action was brought by Robert Ecton against I. G. Harlan and Mary Harlan to foreclose said mortgage, upon the twenty-first day of November, 1873, and that said action was brought in the district court of Crawford county, and that the issues were joined in said

action, and said action was continued from term to term until the September term, 1876, of said court, when a trial was had in said action and a judgment rendered therein in favor of the plaintiff in said action, and against the defendant therein, I. G. Harlan, for the sum of two hundred and fifty dollars ($250) and costs of suit. Said judgment was rendered upon the twenty-ninth day of September, 1876, and a decree was at the same time ordered in said action, foreclosing said mortgage and ordering said real estate sold to pay the said judgment and costs of suit; and upon the same day the plaintiff in said action, Robert Ecton, filed a motion for a new trial therein, which was by the said court, upon the 6th day of October, 1876, overruled, and to the order overruling said motion the plaintiff in said action excepted, and caused his exception to be noted of record; and the court then allowed the plaintiff in said action, Robert Ecton, sixty days' time within which to make and serve a case-made for the supreme court. But there was no entry made upon the journal, trial docket, or elsewhere upon the records of said court, of the order of said court allowing the said plaintiff, Robert Ecton, sixty days' time within which to make and serve a case for the supreme court; and afterward, upon the nineteenth day of October, 1876, said court adjourned for the term, and no bill of exceptions or case-made was settled, allowed, or filed in said action during the said term of court; and afterward, on the tenth day of November, 1876, the said I. G. Harlan paid to the clerk of said court the full amount of said judgment and costs of said action, and the said clerk receipted the said judgment in full upon the records of said court; and afterward, upon the seventh day of December, 1876, the judge who presided at said trial settled, signed and allowed a case-made in said action. Said case-made was served upon the attorneys of record for the defendants therein, I. G. Harlan and Mary Harlan, upon the second day of December, 1876, and filed in said action December 11, 1876; and that afterward, upon the twelfth day of March, 1877, the plaintiff in said action, Robert Ecton, filed a petition in error in the supreme court of the state of Kansas, against said I. G. Harlan and Mary Harlan, to reverse said judgment, attaching a copy of said made case thereto; and that the supreme court of the state of Kansas, upon consideration of said petition in error, reversed said judgment and granted the said Robert Ecton a new trial therein, for errors appearing only in said case-made; and afterward, upon the twenty-

first day of January, 1879, said case came on for trial in said district court, and the plaintiff therein, Robert Ecton, then recovered a judgment therein against I. G. Harlan for the sum of eight hundred and nine ($809) dollars, and costs of suit, and a decree foreclosing said mortgage, and ordering said real estate sold to pay the said sum of eight hundred and nine dollars ($809) and the costs of said action; and that afterward the plaintiff in said action, Robert Ecton, sold and assigned said judgment to the defendant herein, J. W. Young; and that afterward, upon the fifteenth day of September, 1879, the said real estate was sold by the sheriff of said county, pursuant to said judgment and decree; and that at said sale the said J. W. Young purchased said real estate; and that said sale was afterward by the said court confirmed, and a sheriff's deed for said real estate issued to the said J. W. Young. And the court further finds that the plaintiff herein was not a party to said action, either in the said district court or in said supreme court; and the court further finds from the evidence, that the plaintiff herein did not part with his money so as aforesaid loaned to said I. G. Harlan, until the filing of said case-made in the said district court; and that the plaintiff herein, at the time he parted with said money, had no actual notice of the filing of said case-made, or of the intention of the said Robert Ecton to prosecute a petition in the supreme court of the state of Kansas."

Upon these findings the court rendered a personal judgment against Harlan, as prayed for in the plaintiff's petition, and decreed a foreclosure of the mortgage as against all the defendants except the defendant Young, ordering that the real estate covered by the mortgage be sold, "subject to the right, title and interest" of the defendant Young; and the plaintiff then and there duly excepted. Upon the same day, which was January 20, 1881, the plaintiff filed a motion for a new trial. Upon the next day the court made an order continuing the motion, and allowing the plaintiff thirty days to file affidavits in support thereof, and allowing the defendant thirty days thereafter to file counter affidavits, and allowing the plaintiff until the first day of the next term to file rebutting affidavits. At the next term of court, and upon the 9th day of April, 1881, the court overruled the plaintiff's motion for a new trial, and the plaintiff excepted; and the court then made

an order giving to the plaintiff sixty days within which to make and serve a case for the supreme court, and giving to the defendant Young ten days thereafter to suggest amendments. The case was made and served on June 7, 1881. The defendant Young suggested amendments, and on June 19, 1881, the case was presented to the trial judge for settlement. On September 29, 1881, counsel for both parties appeared before the judge, and the case was then and there settled and signed by the judge, and upon the next day was attested by the seal and signature of the clerk of the court, and was duly filed. Afterward, the plaintiff brought the case to this court. The petition was filed in this court on March 29, 1882, which was within one year after the time when the court below overruled the plaintiff's motion for a new trial; but was not within one year after the time when the judgment was rendered. Other facts will be found stated in the opinion.

*Beeson & Baker,* for plaintiff in error:

*John T. Voss,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: The defendant in error, J. W. Young, who was one of the defendants in the court below, moves in this court to dismiss the petition in error and case-made, upon various grounds, none of which we think are tenable, and hence the motion must be overruled. The principal ground upon which the motion is made, and the only ground that merits any special consideration, is the alleged ground that the case-made was not filed in the supreme court within the proper and prescribed statutory time. Now § 556 of the civil code, as amended in 1881, (Laws of 1881, p. 229,) provides among other things that "no proceeding for reversing, vacating or modifying judgments or final orders shall be commenced unless within one year after the rendition of the judgment or making of the final order complained of;" and it is an admitted fact in this case, that the case-made and pe-

tition in error were not filed in the supreme court within one year after the final judgment was rendered in the case. Hence the plaintiff claims under said § 556 of the civil code, as amended in 1881, that this court has no jurisdiction to review the judgment of the court below, or any proceedings had in the case prior to the rendition of the judgment. This we think is a mistake; for although the case was not filed in this court within one year after the rendition of the final judgment, yet it was so filed within less than one year after the plaintiff's motion for a new trial was heard and overruled, and therefore we think that this court has ample jurisdiction to hear and determine any question and every question that was involved in the motion for a new trial. The order overruling the motion for a new trial, we think was a final order within the meaning of said § 556 and § 542 of the civil code; and if it was, then we think that we not only have power and jurisdiction to adjudicate and determine with regard to the distinctive ruling of the court below in making the order overruling such motion, but we also, and as a necessary consequence, have the power and jurisdiction to review and consider every question and every action or ruling of the court below fairly involved in the final determination of such motion. For the decision of a kindred question, see *Life Ins. Co. v. Twining*, 19 Kas. 349, 366, 367; *Ingersoll v. Yates*, 21 Kas. 90, *et seq.* Some of the questions now raised, we think, were fairly involved in the determination of the plaintiff's motion for a new trial, and hence we shall now proceed to consider the case upon its merits.

The plaintiff in error claims that the record of this case presents four principal questions, as follows:

"*First.* Did the district court err in overruling the objections of the plaintiff in error to the introduction of the 'case-made' in the case of Ecton *v.* Harlan in evidence?

"*Second.* Did the district court err in overruling the objections of the plaintiff in error to the introduction of oral evidence to prove that upon overruling the motion for a new trial in the case of Ecton *v.* Harlan, the court allowed the plaintiff there sixty days' time within which to make and serve a case for the supreme court?

"*Third.* Upon the facts as found by the court, which is paramount—the mortgage to the plaintiff in error, or the sheriff's deed to the defendant in error?

"*Fourth.* Did the plaintiff in error make a sufficient showing to entitle him to a new trial upon the ground of surprise, which ordinary prudence could not have guarded against?"

We shall consider these questions in their order.

I. We do not think that the district court erred in overruling the objections of the plaintiff to the introduction in evidence of the "case made" in the case of Ecton *v.* Harlan. While such "case-made" may have contained some things that were incompetent or irrelevant as evidence, yet it also contained some competent and relevant evidence; and the plaintiff's objections were not specific, but were simply general, for incompetency and irrelevancy, and to the whole "case-made." The plaintiff should have pointed out the incompetent and irrelevant evidence, but he did not; hence, we do not think that the court below erred in permitting the "case-made" to be introduced in evidence over the objections of the plaintiff.

II. Whether the district court erred in overruling the objections of the plaintiff in error to the introduction of oral evidence to prove that upon the overruling of Ecton's motion for a new trial in the case of Ecton *v.* Harlan, sixty days were allowed to make and serve a case for the supreme court, we think is wholly immaterial. The same fact we think was conclusively proved by other evidence. But as to the validity of the evidence to prove this fact, and the bearing that this fact may have in the case, we shall have more to say further on in this opinion.

III. Upon the facts of this case as found by the court below, we think the plaintiff's rights under his mortgage are inferior and subsequent to the rights of the defendant, Young, under his sheriff's deed; but we shall not discuss this question now, for we do not think that the question was fairly involved in the ruling of the court below upon the plaintiff's motion for a new trial. The court below in overruling said

motion, was not called upon to say whether the facts found by it would sustain the judgment, or not.

IV. Neither do we think that the plaintiff in error made a sufficient showing in the court below to entitle him to a new trial upon the ground of surprise, which ordinary prudence could not have guarded against. The plaintiff claims to have been surprised at the evidence given by the witness Frank Playter. In order to understand the evidence of Playter, at which the plaintiff claims to have been surprised, it will be necessary to state some of the facts of the case, which we shall do concisely; and this we shall do also for the purpose of commenting upon some other questions that might be considered as involved in the case.

It appears that on November 10, 1876, and prior thereto, Robert H. Ecton held a mortgage upon the land of Israel G. Harlan — the same land which is now in controversy. This mortgage was recorded in the office of the register of deeds of Crawford county, the county in which the land was situated. No satisfaction of such mortgage has ever been entered upon the records in the office of the register of deeds. Prior to November 10, 1876, Ecton obtained a judgment against Harlan for $250, and costs, and foreclosing the mortgage. Ecton was not satisfied with the judgment, and excepted thereto, and also filed a motion for a new trial, which motion was overruled; and he also excepted to the order of the court overruling his motion for a new trial. He also obtained an order from the court extending the time sixty days within which to make a case for the supreme court. The last-mentioned order, however, was not entered upon the journals, or shown by the records of the court. Playter, however, was cognizant of all these things. F. M. Shaw & Co., of Paola, Miami county, were the agents of the plaintiff Osborne for loaning money, and Playter was a partner of F. M. Shaw & Co. for procuring loans in Crawford county. On November 9, 1876, Playter and Harlan agreed that Harlan should take a loan from the plaintiff Osborne, and in pursuance of such agreement Harlan executed the note and

mortgage now in controversy, which mortgage was duly recorded on the next day; and on that day Playter advanced a sufficient sum of money to pay the judgment rendered in the case of Ecton *v.* Harlan. Playter paid this money, the amount of such judgment, to the clerk of the district court, and the clerk entered the judgment satisfied. This money remained with the clerk, or subject to his order, for some time, until finally one of Harlan's attorneys drew it from the clerk's office and retained the same as attorney's fees due from Harlan to himself. The note and mortgage were, sometime after November 10, 1876, forwarded to the plaintiff Osborne, who resided in the city of Binghamton, in the state of New York; and immediately afterward, and on November 25, 1881, Osborne drew a check for the amount of the note and mortgage on the Metropolitan bank of New York, to be placed to the credit and advice of the First National bank of Paola. At some time afterward, but just when is not shown, F. M. Shaw & Co. received the amount of the note and mortgage; and, at some still later period of time, but when is not shown, and can scarcely be guessed at, Playter received such amount; and in about one year thereafter, the balance of the amount of the note and mortgage was paid by Playter to Harlan. The evidence of Playter, concerning which the plaintiff claims to have been surprised, is as follows:

"I advanced the money to pay off the Ecton judgment against Harlan, for Harlan. It was advanced the 10th of November, 1876. It was not advanced to him for that purpose until after Harlan and wife signed the mortgage and same was placed on record. I expected to get the money back so advanced from Osborne, when papers, the note and mortgage, were forwarded. I afterward got a draft for the amount of Harlan's note and mortgage, less a commission retained by F. M. Shaw & Co. I can't tell just when I got the draft. Could tell by referring to my books over in the bank. . . .

"I have examined my books at the bank, and I think that the draft from Osborne, to pay money on the Harlan mortgage, was received several weeks after the execution of the mortgage. It may have been as long as three weeks. It

came to me through F. M. Shaw & Co., of Paola. I cannot state when it did come exactly, but it was several weeks after the note and mortgage were forwarded."

Playter did not state, however, when the note and mortgage were "forwarded," and there was no evidence introduced upon the trial showing this fact. Playter was a witness for the plaintiff, and it does not appear that the plaintiff was surprised at his evidence, or that he attempted to prove that it was not true until after the findings and judgment of the court below were rendered against him; and we do not think that any of the evidence contained in the affidavits shows that his evidence was not true. He did not testify that he was the agent of Osborne, but he testified that he was the agent of Harlan; and he testified substantially that the money which he advanced for Harlan on November 10, 1876, was his own, and there is nothing in the record that shows otherwise. There is nothing that shows that the money belonged to Osborne. It is true that Osborne's counsel file their affidavits stating that they had believed (and that Playter had so stated to them), previously to the time when Playter gave his testimony in the case, that the money which he had advanced to Harlan belonged to Osborne, and had been advanced to him (Playter) by F. M. Shaw & Co., of Paola, Kansas. Now supposing that Osborne's counsel did believe this, and supposing that Playter told them so, still there is nothing in the record that shows that it is true, and the affidavit of Osborne himself would tend to show that it is not true. No member of the firm of F. M. Shaw & Co. testified that the money advanced belonged to Osborne, and in all probability it did not belong to him. The evidence would seem to show that Osborne did not advance or pay any money on this note and mortgage until some time after their execution, and that he then advanced or paid the whole of it, less $32 deducted for commissions and expenses. Playter also testified that it was several weeks after the mortgage was executed before he received the money that came from Osborne through the various banks and through F. M. Shaw & Co., of Paola, Kan-

sas, to him; and there is nothing in the whole record that tends to contradict this, while the evidence of Harlan shows that Harlan did not receive the money for about one year after the mortgage was executed. There is nothing in the case further than we have already stated, that shows that the plaintiff or his counsel had any reason to suppose that Playter would testify differently from what he did testify; and there is really nothing in the case further than we have already stated, tending to show that the plaintiff or his counsel had any good reason for being surprised at Playter's testimony. And there is nothing in the case that shows that Playter ever will testify differently from what he has already testified. The court below found that Osborne did not part with his money until after the "case-made" in the case of Ecton v. Harlan had been filed in the district court; and we think this finding was founded upon sufficient evidence. The "case-made" itself showed that Ecton had leave from the court to make and serve his case within sixty days; and the case was so made, served, settled, signed, and authenticated and filed in the district court within that time. The case was afterward taken to the supreme court, where the judgment of the district court was reversed, and the cause remanded for a new trial. ( *Ecton v. Harlan*, 20 Kas. 452.)

Upon the findings of the court below we think its judgment is correct; and we think the findings are sustained by sufficient evidence; and no substantial error was committed. If Playter was the agent of Osborne, then the judgment was certainly correct; and there is considerable in the case tending to show that Playter was the agent of Osborne. F. M. Shaw & Co., of Paola, Kansas, were Osborne's agents, and Playter was a partner of F. M. Shaw & Co. for procuring loans in Crawford county, Kansas. He procured this loan; he advanced money on it, (and the plaintiff's counsel admit and would almost seem to claim that the money advanced was Osborne's money;) the note and mortgage were forwarded to Osborne, and Osborne accepted them, made them his own and paid for them, thereby apparently ratifying whatever had

been done in procuring them; and Playter was afterward reimbursed (provided the amount had not been previously furnished to him) for the amount that he had advanced; and Playter had full knowledge of the proceedings in the case of Ecton *v.* Harlan and knew Ecton was preparing to take the case to the supreme court. But supposing that Playter was not the agent of Osborne, and supposing that he was in fact the agent of Harlan — and this is just what the plaintiff contends, and is just what Playter testified to, and seemingly this is precisely the theory upon which the court below founded its decision in the case: then still, upon the other facts of the case, we think it must be presumed in law that when Osborne parted with his money he knew just the condition of Ecton's mortgage and Ecton's suit against Harlan, and knew that Ecton's mortgage was not satisfied, and that Ecton was preparing to take his case against Harlan to the supreme court. The present defendant, Young, simply takes Ecton's place. At the time that Osborne parted with his money, Ecton's mortgage stood recorded in the office of the register of deeds, and was not satisfied or discharged upon the records of the office of the register of deeds, as the law provides that a mortgage shall be whenever it has been satisfied. (Comp. Laws of 1879, pp. 555, 556, §§ 5, 6, 7 and 8.) A judgment was rendered in favor of Ecton and against Harlan, upon such mortgage in the district court; but the record of the judgment showed that Ecton was not satisfied with the judgment; and the "case-made," which was then on file in the clerk's office, also showed that Ecton was not satisfied with the judgment, and that he intended to take the case to the supreme court and have the judgment reversed, if he could succeed in so doing; and the "case-made" upon its face showed that it was a valid "case-made;" and although an amount had been paid to the clerk by Playter sufficient to satisfy the judgment, yet by asking the clerk the plaintiff could have ascertained that Ecton had not and would not receive the same.

We think that the judgment of the court below was rightly rendered, and therefore it will be affirmed.

All the Justices concurring.