## HEYWOOD, Executor, etc., v. BERKELEY LAND & TOWN IMP. ASSOCIATION and Others.*

### No. 8296; May 26, 1886.

#### 11 Pac. 246.

**Lease—Breach of Covenant to Operate Ferry.**—A covenant in a lease that premises should be "used in good faith, continuously, during the existence of the lease, for the usual and ordinary business of a ferry (a boat having theretofore made regular daily trips therefrom), held to be broken by failure to operate the ferry during a period of twenty-nine days.

APPEAL from Superior Court, County of Alameda.

H. A. Powell for appellant; Edward J. Pringle for respondent.

BELCHER, C. C.—This is ejectment to recover certain leased premises, upon the ground that the lease had become forfeited and void. It appears from the record that on the fourth day of April, 1877, Z. B. Heywood leased to the de-

*For subsequent opinion in bank, see 71 Cal. 349, 12 Pac. 232.

fendant the Berkeley Land & Town Improvement Association, a corporation, the Berkeley Ferry wharf, with two strips of land, on one of which the wharf was constructed, for the term of ten years, at the rental of one dollar per year, payable in advance, with an agreement at the end of the term to execute "a new lease, similar in all respects to this, and to run the same period of ten years," and "that this renewal clause shall be inserted in said new lease verbatim." In consideration of receiving the lease the lessee covenanted and agreed, among other things, "that said leased premises shall be used in good faith, continuously, during the existence of this lease, for the usual and ordinary business of a ferry to and from the city and county of San Francisco, and shall not be used for any other purpose whatever." The lease further provided as follows: "And it is distinctly understood and agreed by and between the parties hereto that if default be made in any of the covenants herein contained on the part and behalf of the said party of the second part, its successors or assigns, to be paid, kept, and performed, in any particular, as to time or circumstance, then and from thenceforth this indenture of lease shall be forfeited and become void, and it shall and may be lawful for the said party of the first part to re-enter in and upon said leased premises, and the same to have again, repossess, and enjoy."

Immediately upon the execution of the lease the lessee put upon the route a steam ferry-boat, which continued to run, making daily trips, and carrying freight and passengers, between West Berkeley and the city of San Francisco, until the first day of April, 1880. On that day the boat was libeled and seized by the United States marshal for money due its officers from the improvement association, and it remained tied up in the custody of the marshal until the twenty-ninth day of the month, when it was sold by him, under judicial process, to the defendant R. P. Thomas. The improvement association then assigned its lease to Thomas, and on the evening of the day of sale the boat resumed its trips, and thereafter continued to make them daily up to the time of trial.

Between the 1st and the 29th of April no ferry-boat was run between the leased wharf, or any point at or near West Berkeley and the city of San Francisco, and no other boat, except a small schooner four feet deep and twenty years old,

which was owned and operated by other parties. The schooner made occasional trips, in all seven or eight, as wind and weather would permit, but, as her master testified, "sometimes she would be gone a week, and sometimes she would come back in half a day, according to how the weather was. She had to go with the wind and weather, and she could not possibly go regularly." The rent of one dollar per year reserved in the lease was nominal; the answer admitting that the rental value of the leased premises was three hundred dollars per year, and some of the witnesses testifying that it was twelve hundred dollars. The real consideration that moved Heywood to make the lease was the fact that he owned a large amount of property at West Berkeley besides the leased premises, and believed that that property would be greatly enhanced in value if a regular ferry could be established and maintained between that place and the city of San Francisco. Heywood died in 1879, and this action was commenced by the executor of his estate in May, 1880.

The case was tried by the court, and its findings and judgment were in favor of the defendants. The plaintiff moved for a new trial, and, his motion being denied, appealed from the judgment and order. The court found that the leased premises "have, since the first day of April, 1880, been used in good faith, continuously, for the usual and ordinary business of a ferry to and from the city and county of San Francisco, and for no period since the first day of April, 1880, were the said leased premises not used for the business or the purposes of a ferry."

The principal question presented for our determination is, Was this finding justified by the evidence, the substance of which we have stated, and in which there was no material conflict? We do not think it was. There is no pretense that the ferry was operated at all between the 1st and the 29th of April, and we are unable to see how the ferry wharf could have been used in good faith, continuously, for the usual and ordinary business of a ferry, when no ferry-boat went from or to it during all of that time. A ferry requires a ferry-boat, and the usual and ordinary business of a ferry is the transportation of passengers and freight between the ferry landings. How, then, can it be said that a ferry wharf has been used continuously for ferry business when the ferry-boat has

been tied up, and its trips discontinued, for twenty-eight consecutive days.

We attach no importance to the fact that the small schooner sometimes went over and took freight from West Berkeley, as it was owned and operated by other parties, who never undertook or were even requested to do the ferry business.

The parties to the lease expressly stipulated that the lease should be forfeited and become void, and the lessor should have the right to re-enter and repossess the property, whenever the lessee, its successors or assigns, should fail, in any particular as to time or circumstance, to keep and perform the covenants of the lease. In our opinion, the covenant that the premises should be "used in good faith, continuously, during the existence of this lease, for the usual and ordinary business of a ferry to and from the city and county of San Francisco," was broken by the failure, under the circumstances disclosed by the evidence, to operate the ferry from the 1st to the 29th of April. When the breach occurred the plaintiff had the right to re-enter upon the property, and to maintain an action of ejectment for its possession: Civ. Code, sec. 793. Courts of equity often relieve against forfeitures (Keller v. Lewis, 53 Cal. 118; Giles v. Austin, 62 N. Y. 486); but whether a court of equity would relieve against this forfeiture is a question which, as the case is now presented, does not arise.

The expenditures upon the wharf and boat, relied upon by the respondents, were made before the lease was executed, and therefore cannot aid them.

The one dollar rent for the year commencing April 4, 1880, was paid in March. It was not necessary that that should be returned in order that the plaintiff might maintain his action.

The judgment and order should be reversed and the cause remanded for a new trial.

We concur: Foote, C.; Searls, C.

By the COURT.—For the reasons given in the foregoing opinion the judgment and order are reversed, and cause remanded for a new trial.