## THE HAZARD POWDER COMPANY v. OTTO H. VIERGUTZ, *et al.*

1. DIVIDING CAUSES OF ACTION—*Former Suit—Evidence—Practice.* If the plaintiff brings two suits on an open account, it is not improper to admit on the trial of the second action, testimony of payments that were in evidence on the first trial, if the jury are properly cautioned that the defendants cannot be twice allowed for the same payments; justice requiring all the evidence on the trial of the first action to be admitted on the second.

2. CHARGE TO JURY—*Repeating Instructions.* The law having been once given by the court, it is neither necessary nor proper to repeat it because asked by one of the parties.

3. VERDICT—GENERAL—SPECIAL FINDINGS. When a general verdict is found, and answers are made to certain questions as to specific facts, the answers do not necessarily constitute such a special verdict as may be necessary to support a judgment, but they must all be in harmony with the general verdict and with each other.

4. PRACTICE—*Special Findings— When to Object.* When specific questions are submitted to a jury at the instance of the plaintiff, and the answer to one of them is not full and responsive, it is the duty of the plaintiff to ask, before the jury is discharged, that they be directed to make more perfect answers.

*Error from Leavenworth District Court.*

ACTION brought by *The Hazard Powder Company*, a corporation created under the laws of Connecticut, to recover of the defendants *Otto H. Viergutz, David Prager & Julius Haug,* partners, etc., divers sums of money, amounting in the aggregate to $8,707.69. The petition contained nine separate counts, each alleging a separate indebtedness as follows: 1st, $261.13, May 28, 1866; 2d, $3,957.20, December 1, 1866; 3d, $2,958.30, December 7, 1866; 4th, $712.50, January 7, 1867; 5th, $215.46, September 5, 1866; 6th, $101.25, April 17, 1867; 7th, $96.90, April 17, 1867; 8th, $400, May 17, 1867; 9th, $4.94, May 7, 1867. Each of these sums was alleged to be due for certain "goods, wares and merchandise" sold to defendants, except the ninth, which was stated to have been paid for insurance on the goods. Interest wa demanded on each sum claimed.

The defendants answered—*first*, a general denial; *second*, that they had paid the sum of $1,081.87 to apply on claims stated in the 4th, 5th, 6th, 7th, 8th and 9th counts of the petition, and admitting an unpaid balance due the plaintiff on said claims of $449.19 ; *third*, that the defendants purchased of the plaintiff the goods mentioned in the 1st, 2d and 3d counts in the petition, "in May and June, 1866, amounting to $7,176.63 to be by them taken to Montana, under a special agreement between the parties, that defendants were to ship said goods to Montana Territory, and whenever defendants should dispose of said goods and merchandise, and they should realize the cash from the proceeds arising from such sales, then said sum was to become due and payable, defendants first deducting from the cash proceeds thereof the cost of transportation of said merchandise; that it was further agreed between the parties, that if defendants did not sell and dispose of said merchandise as aforesaid, within six months next following said purchase aforesaid, and did not realize the cash therefor, said defendants were to pay interest thereon from and after that time, at the rate of six per cent. per annum, to be due and payable with said principal; and defendants aver, that no part of said merchandise has been disposed of for cash, nor have defendants realized from the sale thereof, any money whatever; but defendants aver, that said goods and merchandise were bartered by defendants, in Montana, upon the most advantageous terms that could be obtained, said barter being for a voucher duly issued and approved, and calling for $16,791 ; and that thereupon the plaintiff further agreed, that if defendants would deliver and turn over to plaintiff said voucher plaintiff would collect the same, and out of the cash

proceeds thereof, fully discharge, satisfy and pay off the amount of principal and interest found to be due upon said merchandise purchased as aforesaid, and hold the balance remaining in the hands of plaintiff, in trust for defendants, and subject to their order; that in pursuance of said agreement defendants delivered said voucher to plaintiff; that said plaintiff still retains said voucher, obtained under said agreement, but has wholly failed and refused to satisfy the above mentioned claim as it had agreed."

The plaintiff replied, denying the matters stated in the second and third defenses of the answer; and alleging that, "in September, 1869, the plaintiff commenced an action in the Leavenworth District Court against *Otto H. Viergutz,* one of the defendants in this action, to recover the sum of $3,475.52 with interest from the 26th of August, 1869, for certain goods, wares and merchandise sold and delivered by the plaintiff to the defendants in this action; that the payments alleged by the defendants in this action, in the second defense in their answer herein, to have been made upon and on account of the claims of the plaintiff as set forth in the 4th, 5th, 6th, 7th, 8th and 9th causes of action in its petition herein, were not made upon such causes of action, but were in fact made upon and on account of the claim of the plaintiff sued upon in the said action of the plaintiff against said *Otto H. Viergutz,* and were set up and claimed by the said *Viergutz* in said last mentioned action, and were given in evidence therein to the jury on the trial thereof, and were allowed and found by the jury to have been paid upon the claim sued upon in said action; and by reason of such allowance and findings, the said jury found for the said *Viergutz* in said action on the merits, and on the 12th of February,

1870, the said court duly rendered judgment in said action on said verdict, that the said Viergutz go thence without day, and recover of and from the said plaintiff, his costs in and about said action expended." The reply further alleged, that "the said payments were, with others, originally credited upon the claim sued upon in this action by the plaintiff by mistake;" and that "certain credits, amounting in the aggregate to $3,343.30 were heretofore credited by plaintiff on the claim sued upon in this action, by mistake; and all of said credits should have been given on the claim sued upon in the action hereinbefore mentioned against said *Otto H. Viergutz*, and the defendants in this action are not entitled to any credits upon the plaintiff's claims herein."

The issues thus made up, came on for trial before the court, and a jury. The evidence was very voluminous, and related to the items involved in the former action, as well as those in controversy here. The court admitted in evidence, over the objections of the plaintiff, a receipt of the plaintiff for $64.49, in full for insurance from St. Louis to Leavenworth, on invoice March 7, 1866; also a receipt of the plaintiff for $91.00, for bill of fuse of 27th March, 1866. Neither of the items mentioned in these receipts was claimed by the plaintiff in this action, or in the other action referred to in the plaintiff's reply. The plaintiff also objected to the admission in evidence of the payments and credits which had been given in evidence in the other action referred to.

The court gave written instructions to the jury; after which, the plaintiff requested the court to give certain instructions which plaintiff had prepared, which were refused, and plaintiff excepted. These instructions, and the verdict of the jury, and certain special findings made

by the jury, at the plaintiff's request, in respect to certain controverted facts, are all set out in the opinion of the court. Verdict for the plaintiff.

The plaintiff moved for a new trial, which was overruled; and, also to set aside the verdict and findings, and award a *venire facias de novo*, which was also overruled; and judgment entered in favor of the plaintiff for $458.53. The plaintiff complains that this judgment is too small, and he brings the case here by petition in error for review.

*James McCahon*, for plaintiff in error:

1. The receipts, bills, invoices, etc., objected to were totally irrelevant to the issues, and should have been rejected.

2. The court should have given the instructions requested by the plaintiff. If the defendants, on the trial of the former case, represented the payments and credits given in evidence in this case as having been made upon and applicable to the claim sued upon in such former case, and were allowed such payments and credits in that case, and thus defeated a recovery therein, they cannot again be allowed for the same payments and credits in this action. 12 Md., 555; 13 How., 307; 11 Paige, 289; 10 Ohio St., 198.

3. A general verdict is that by which the jury pronounces generally upon all or any of the issues, either in favor of the plaintiff or defendant. Gen. Stat., 683, § 285; 3 Bl. Com., 377.

A verdict for a party generally is a finding in his favor of every material fact well pleaded. 15 Texas, 382; 14 Wis., 63; 35 Barb., 644; 16 Peters, 319.

The issues having all been found for the plaintiff, the amount of the recovery was too small—there being no conflicting evidence as to the amounts.

The special findings of fact show the conclusions upon which the general verdict is based, and to this extent form a part of the verdict. When the special findings of fact are inconsistent with the general verdict, the former control the latter. The special findings in such case take the place of the general verdict. In this case the special findings of fact are not only inconsistent with the general verdict, which finds all the issues for the plaintiff, but are inconsistent with each other—especially the first and fourth of such special findings.

The ninth finding of fact does not find any issues either formally or substantially. It does not find whether the money has been realized or not, or whether the amount is due or not. It would take another jury to ascertain what this finding meant.

The special findings of fact are not merely inconsistent with each other; they find inconsistent material facts. The fourth special finding is, that the defendants have made payments on the claims sued upon in this case, to the amount of $1,225.85; yet the defendants, in their answer, allege and claim payments to the amount of $1,081.87, and no more.

The eleventh special finding shows that a credit of $700 has been allowed the defendants twice. Said credit of $700 was credited on the account sued upon in the former case before suit brought; the amount of the plaintiff's claims in that case, after deducting that payment and another, was $3,475.75, as found in the fifth special finding. In the second special finding, the jury find that the payments and credits given in evidence, and

allowed in that case, amounted to $3,475.52, the same as the plaintiff's claim in that case; and in the third special finding, they find that the amount of the excess of the payments and credits claimed and given in evidence in that case, over and above the amount of the plaintiff's claim in that case, is $1,225.85, and by the fourth finding, that this last amount is the amount of the payments the defendants have made upon the claims sued upon in this case, thus showing beyond a doubt that this payment of $700 has been twice allowed.

4. The court below, on the motion for a new trial, decided that the general verdict, taken in connection with the special findings, was sufficient, thus giving effect to both. The plaintiff then filed a motion to set aside the verdict and special findings and award a *venire facias de novo*. The distinction between a new trial and a venire de novo, is this: the *venire de novo* is awarded for some defect appearing on the face of the record; a new trial is granted for matters extrinsic to the record. 2 G. & W., 36, 38; Tidd's Practice, 854, 922; 18 Ind., 44; 25 id., 473.

*F. P. Fitzwilliam*, and *Clough & Wheat*, for defendants in error:

1. The defendants only claimed payment of $1,081.87 on the last five causes of action set out in the petition, and conceded a balance due thereon. The only issue made by the pleadings, of *payment*, was whether the sum of $1,081.87 was paid on said five causes of action or not.

At plaintiff's request the jury were asked this question: "What payments have the defendants made on the claims of the plaintiff *sued upon in this case?*" The jury, in answering this question, stated the sum to be $1225.85, thus showing that plaintiff had received $143.98

on all of the claims sued on more than defendants in their answer claimed had been paid on five of the said causes of action.    Whether this $143.98 was actually paid on the five causes of action, or on the other three, the jury were not asked.

2. The plaintiff claimed that the Montana claim was due.    This was denied, and there was some evidence that defendants realized a small amount of cash in addition to the voucher, which went to pay freight, etc.    The jury might well have found the whole amount of credits that defendants were entitled to upon the entire claims of plaintiff, was $1225.85.

3. Plaintiff claimed to recover in the first action $3475.52.    To this add $1081.87, the amount of payments set up in the answer, and we have $4557.39.    The evidence tended to show that defendants were entitled to a credit on the several causes of action, set out in the two actions, of $4794.24; deduct $4557.39 from this last sum, and we have $236.85 left.    This amount defendants should have admitted due to the plaintiff instead of the sum of $449.19.

But the jury were directed by the instruction of the court that they could not find a less sum than the answer admitted to be due to plaintiff.    It is manifest that defendants admitted due the plaintiff $212.34 more than the evidence shows they owed, unless this amount should be considered as paid on the Montana claim.

4. Viergutz was sued in the first action as upon an individual account.    The answer to the sixth question found that all the transactions in both actions were firm transactions of O. H. Viergutz & Co.    The reasonable inference from the evidence and finding of the jury, is

that the plaintiff split its causes of action, and brought two actions in order to get credits upon claims not yet due. The affirmation in the reply, that plaintiff had made a "mistake" in the credits given in the original petition filed in this action, is not sustained by the evidence in the case.

5. On the trial of the first action it was proper for the defendant then to prove that the cause of action therein sued on had been discharged; and then on the trial of the second action the defendants therein would necessarily be required to show just what they would if both actions had been on trial together, and plaintiff could not recover more than if all the claims had been sued on in one action.

6. The amount claimed by plaintiff in the first action was $3,475.52. This sum the jury that tried that case found was satisfied in full. The jury in the action under consideration find that the plaintiff has given *credits* and received *payments* over and above the amount claimed in the first suit of $1,225.85. Adding these two amounts together we have $4,701.37. Now if we take the amount of *credits* and payments appearing from the evidence at the trial, we have $4,794.24, making a difference in favor of plaintiff of $92.87—and of which the defendants only could be heard to complain.

7. Plaintiff's proposition, that the general verdict finds all the issues in favor of the plaintiff, and is a negative of the several matters and things set up in defense, is not supported by the record.

8. It is also claimed on the part of the plaintiff that the special findings are not consistent, and therefore not sufficient to uphold the judgment. The record shows

that each special finding of fact was predicated upon evidence adduced at the trial, and some upon conflicting evidence. This court will not disturb a finding of fact otherwise proper, when based upon conflicting evidence.

9. If any of the questions submitted to the jury were not answered as fully as the plaintiff may have desired, the time in which to urge such an objection was before the jury was discharged from the further consideration of the case. Failing to do so, it will not be heard for the first time on such an objection in the reviewing court.

10. The motion for a new trial was properly overruled, the substantial rights of the parties not being materially affected. In admitting evidence to show the whole amount of payments made to the plaintiff, there was no error.

11. The court committed no error in overruling the motion for a *venire de novo*. The code provides when and in what manner and upon what grounds a new trial may be had. Having specifically specified these things, it has excluded any other. 1 Kas., 145, 348.

This was but a *renewal* of the motion for a new trial. Neither the practice in the courts of Kansas, nor the rules of the court in which this case was tried, recognizes the right to make such a motion. If such motion can be entertained in a proper case, yet it must be made within the time fixed by statute for a motion for a new trial. The plaintiff cannot have two separate motions entertained for a new trial.

In addition to these objections, the motion for a *venire de novo* only goes to defects in the verdict. The verdict is not defective. Therefore the motion was properly overruled.

The opinion of the court was delivered by

KINGMAN, C. J.: The plaintiff in error, who was plaintiff below, obtained a judgment against the defendants in error for $458.53. Plaintiff claimed in the petition divers sums, in nine different causes of action, amounting in the aggregate to $8,707.69, and interest thereon. Defendants for answer made a general denial, and for a second defense pleaded payment on the several causes of action embraced in causes four, five, six, seven, eight and nine, of the petition, to the amount of $1081.87, and admitted a balance due and unpaid on those counts in the petition of $449.19; and for a third defense, to the first, second and third causes of action, claimed that the articles therein alleged to have been sold to defendants, amounting in the aggregate to $7,176.63 were purchased under a special agreement to the effect that the defendants were to ship the goods, mainly powder, to Montana Territory, and whenever said defendants should dispose of said goods and they should realize the money arising from the proceeds of such sale, the said sum was to become due and payable, meantime to bear interest after six months; averring that the goods could not be sold for money, and that defendants had sold them for a voucher in amount $16,791, of which fact they notified the plaintiff, and had delivered the voucher to the plaintiff to collect or dispose of, and when the proceeds were realized to pay for the goods and hold the remainder subject to the order of the defendants, and the plaintiff still holds the voucher.

The plaintiff replied by a general traverse, and in a second, third, and fourth reply set up substantially that defendants had had the benefit of the payments set up in

31

their answer in another action, and that plaintiff had by mistake once given certain credits on certain of the causes of action set up in the petition. These issues were tried, and a general verdict rendered for the plaintiff, as above stated. At the request of the plaintiff the jury also returned answers to certain questions submitted to them.

The testimony is all in the case, and is very voluminous, and is made somewhat complicated from the fact that the plaintiff in a previous action, had sued on

*1. Dividing causes of action; former suit; proof of.*

a part of his account, and Viergutz, the defendant in that action, had proved payments to the plaintiff to an amount larger than the claim of the plaintiff in that action. The judgment in that case was for. the defendant for costs, but not for the overplus of the payments beyond the plaintiff's demand. In the present action it became necessary to introduce evidence of all the payments made; and the difficulty arose out of the fact, that what had been claimed by the defendants in the former action could not be distinguished from those made in this. The court below very properly admitted it all, for it would have been a gross wrong to have permitted the plaintiff, by making two actions on one account, to have so complicated the testimony as to have precluded the defendants from obtaining the benefit of all the payments they had really made. The court let in all this testimony, as well as the judgment and proceedings in the former case; but as the testimony in the former case was not preserved, it was impossible to distinguish with precision what had been testified to in that case, or for what reason some of the testimony had been admitted. It was all admitted; and for this reason we cannot say that the receipts of payments made on the

26th March, and the 17th April, 1866, were improper testimony. The first of these payments was made before any of the claims sued on in this action arose, and the second was made for fuse purchased before the account sued on was made, if we are to determine that fact from the date of the account, or the testimony; but it is impossible for us, as it was for the court below, to determine what had been in evidence on the former trial.

The defendants' theory, on this part of the defense, seems to have been to admit the justice of the plaintiff's claim in the former suit, and claim as a credit in this one all they could prove, and then deduct the plaintiff's demand in the former action from that, and for the remainder they would be entitled to a credit in this action. And this was the only course left for the court to pursue; and in this view we cannot say that the two receipts for $64.49 and $91 were improperly submitted to the jury. They were in evidence in the first suit, (see the testimony of Viergutz;) and the court was to presume were properly in that suit; and the condition of the case requiring that all the credits to which defendants were entitled in both suits should go in evidence, these papers were properly in. It will be conceded that it is an awkward and unartistic method of trying a case; but this condition of things was brought about by the plaintiff splitting up his account so as to make two causes of action. If defendants had made more payments than the amount of the claim in the first action, they were entitled to have them go on the claim set up in the last. These remarks will also apply to the other testimony admitted over plaintiff's objections.

II. The next point that is made is in the court's refusal to give a certain instruction to the effect "that if the action of the plaintiff against Otto H. Viergutz alone, in this court, of which evidence is before you, was upon an indebtedness of the firm of O. H. Viergutz & Co., the defendants in *this* case, and the defendant in that case gave in evidence payments or other credits to defeat the claim of the plaintiff in that case, the same payments or credits cannot again be used to defeat the claim of the plaintiff in this case." This instruction was asked after the court had charged the jury, and was refused—and properly, for although it was the law of the case, it had already been fully given, as is sufficiently evident from the following extract from the charge of the court: " The defendants cannot be twice " allowed the benefit of the same payments or credits. " * * * The defendants in this action are not entitled " to the benefit of any payments or credits, which they " received the benefit of in the former action, or which " Mr. Viergutz the defendant in that action received the " benefit of. They cannot be twice allowed for the same " payment or credit. The defendants should receive the " benefit of all payments or credits which the testimony " shows have been made upon the claims sued upon in " this action unless it shows that the defendant received " the benefit of the payments thus shown or part of them " in the other action to which I have alluded." Having thus explicitly given the law, the court was not called upon to repeat it.

*2. Charge; refusal to repeat, no error.*

III. A motion for a new trial was made and overruled; and on that motion, various questions were argued, which will be now considered so far as they are deemed important in this decision. It has

*3. Verdict—general—special findings.*

already been stated that the jury found a general verdict for plaintiff which is as follows: "We the jury find for the plaintiff, and assess his damages at $458.53."

The jury also found certain special facts responsive to "interrogatories" submitted to them by the court at the instance of the plaintiff, as follows:

*Interrogatory First:* What amount, if any, is due from the defendants to the plaintiff on the claims sued upon in this case, exclusive of payments and all other credits? [Answer—$458.53.]

*Second:* What amount of the payments and credits given in evidence by the defendants, was given in evidence and allowed to the defendants in the case of the Hazard Powder Company against Otto H. Viergutz, heretofore tried in this court? [Answer—$3,475.52.]

*Third:* What was the amount of the excess, if any, of the payments and credits claimed and given in evidence in that case, over and above the amount of the plaintiff's claim in that case? [Answer—$1,225.85.]

*Fourth:* What payments have the defendants made on the claims of the plaintiff, sued upon in this case? Answer—$1,225.85.]

*Fifth:* What was the amount of the plaintiff's claim in the case of the Hazard Powder Company against Viergutz, heretofore tried in this court? [Answer—$3,475.52.]

*Sixth:* Was the plaintiff's claim in that case on an account or demand for goods sold and delivered by the plaintiff to O. H. Viergutz, David Prager and Julius Haug, partners, as "O. H. Viergutz & Co.," the defendants in this action? [Answer—Yes.]

*Seventh:* Was the Montana voucher delivered to the plaintiff as a payment, or as security only? [Answer— As security.]

*Eighth:* Was the transaction between the plaintiff and defendants in relation to the Montana powder a sale or not? [Answer—It was a sale.]

*Ninth:* If it was a sale, what were the terms of the sale, and when was the amount thereof due? [Answer— The amount is due when money is realized for goods sold.]

*Tenth:* If it was not a sale, what were the terms of the transaction? [Answer—It was a sale.]

*Eleventh:* Is the credit of October 31, 1867, of $700 on the account, sued on in the case of the Hazard Powder Company against Viergutz, the same credit of that amount claimed in this case? [Answer—Yes.]

It is claimed by the plaintiff in error that the special findings of fact are not only inconsistent with the general verdict, but are inconsistent with each other. It will be observed that the special findings are not, strictly speaking, a special verdict, though in many respects they may be assimilated to a special verdict; but they differ in this—that they do not purport to be all the points which the jury agreed upon, or found necessary to consider, in deciding the questions submitted to them. They are answers responsive to certain questions. Any fact necessary to be decided by them in reaching a verdict, and not within the scope of these inquiries, would not appear in the answers; so that we have not to determine whether taken as a whole they are sufficient to uphold the judgment; but if any of them are inconsistent with the general verdict, to that extent it ought to take the place of the general verdict; and of course the general verdict ought not to stand, if the inconsistency is of such a character that it is apparent that both cannot be correct, and probably subject to the further consideration of whether it may be seen from the record that substantial injustice may have resulted from the conflict. It is not every error that vitiates a verdict. They are to be favorably construed; and if sufficiently certain upon matters of sub-

stance, though informal, the court will mould them into form.  (13 Wis., 420; 10 Mass., 71.)

There can be no question but that the verdict must dispose of all the issues; if it does that with sufficient certainty to be understood with reference to the proceedings, that is all that should be required.  Now in the pleadings in this case, while there is a general denial, there is enough to show that defendants admitted that the claims in causes of action numbered 4th, 5th, 6th, 7th, 8th and 9th, amounting to $1,531.06, were valid claims, and that payments thereon had been made to the amount of $1,081.87.  This would leave due on those claims $449.19.  The other part of the plaintiff's claim it was urged, was not yet due by the terms of the purchase; so that there were in fact two main questions—one, as to the payments made on one part of the claim, and the other, as to whether that portion of the claim was due. The court instructed the jury that they must find for the plaintiff on the pleadings at least $449.19; and under proper instructions, left the other questions to them. The jury actually found a sum a little larger than was required by the pleadings, probably as interest from the time the action was brought, or for some other cause. It is apparent from this verdict that they found the issue on causes of action numbered 1st, 2d, and 3d, for the defendant; and thus by the general verdict, under proper instructions, they passed upon all the issues submitted to them, and found for the plaintiff as stated; and this is all that is essential in a verdict.  It is erroneous to infer from such a verdict on such pleadings that they found all the issues for the plaintiff.  Neither reason nor the authorities sustain any such doctrine.  Nor do we find on careful scrutiny any conflict with this general verdict

in the special findings. They are in harmony with it, and with each other. The apparent conflict between the first and fourth answers vanishes, when we look at the issues and the evidence. The jury had, under the direction of the court, already found under the pleadings the sum mentioned in the answer to the first question, while the evidence would fairly enough justify the jury in saying that the payments were larger than the verdict would indicate. The verdict was necessary on the pleadings. The answer was predicated on the testimony.

The ninth finding of fact is only by itself responsive to a portion of the question. It does not state what were

4. Special find- the terms of the sale, and this was embraced
ings; duty of
party; waiver: in the question submitted. To this objection two answers may be given; first, the questions were submitted at the request of the plaintiff. If they were not full and sufficient answers, he should have asked that the jury be directed to make more perfect answers, and the defect would have been cured without the cost of another trial. *Blachley v. Sheldon,* 7 Johns., 32. Second, there is no difficulty in understanding the jury's answer when the pleadings and the instructions of the court are examined in connection with the verdict and the other special findings. Nor can we say against the verdict of the jury that the $700 mentioned in answer eleven has been twice allowed as a credit to the defendants. This matter was fairly submitted to the jury; and whatever uncertainty we might feel on this question, as well as on the more important one as to when the Montana powder claim is payable, still they were fairly submitted to the jury on evidence tending to sustain the verdict, and it is not the province of a reviewing court to disturb such a verdict because the evidence is conflicting.

Having found no error in the record it becomes unnecessary to consider the motion for a *venire facias de novo.* We may state however, that it seems a stranger to our code, and is not likely to meet with much favor from the profession.

The judgment must be affirmed.

All the Justices concurring.