STANARD v. SAMPSON *et ux.*

No. 2127, Okla. T.   Opinion Filed January 13, 1909.

(99 Pac. 796.)

1.   TRIAL—Appeal and Error—Verdict—General and Special—Waiver of General Verdict—Estoppel to Assert Error.   In all cases triable by a jury, the parties thereto are entitled to have a general verdict returned, and at the request of any party thereto, in addition to the general verdict, to have the jury directed to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same.

1a. When any party to an action triable by a jury permits the general verdict to be dispensed with by order of the court, and the answers or findings upon the particular questions of fact to be returned into open court and recorded, without any objection and afterwards files a motion for judgment in his favor thereon, he will not be permitted thus to induce the court to commit an irregularity, and, after speculating upon its result in seeking a judgment thereon in his favor, be heard on review here to complain because no general verdict was returned, but same will be treated as waived.

2.     **TRIAL—Special Verdict—Judgment.** When a jury return their answers to the particular questions submitted, and no motion for a new trial is filed for a re-examination of the facts or to set same aside, the only question for the trial court is to determine whether or not it is proper to render judgment on the facts as found, as applied to the pleadings.

2a. Where a party moves for judgment in his favor on a special verdict, no motion for a new trial or to set aside such findings having been made, and excepts to the action of the court in rendering judgment on such findings, he thereby admits, so far as such action of the court is concerned, that the special findings state the facts fully and correctly.

3.     **APPEAL AND ERROR—Presentation and 'Reservation of Error —Motion for New Trial—Necessity.** A general verdict not having been returned, but answers to specific questions, both sides having filed and presented motions for judgment thereon, in the absence of a timely objection with proper exceptions, and the assigning of such action as error in a motion for a new trial, the same will not be reviewed here

4.     **TRIAL—Special Verdict—Signing by Foreman—Waiver.** When the special answers or findings are returned, the jurors each being polled ad seriatim answered that the same as read by the clerk were his. No objection was made by either party, or request, that such special findings or answers should be signed, and each party filed and presented a motion for judgment in his or their favor on such special findings. Held, that this was a waiver of the irregularity, in the foreman not signing the answers or findings as required by the statute.

5.     **BILLS AND NOTES—Consideration—Effect of Partial Illegality.** If the consideration of a note is partly illegal, the whole note is void; and, where the note is given in settlement of pre-existing debts, in addition to certain sums of money advanced to one of the makers at the time of signing same, and also for the agreed purpose of discontinuing a pending prosecution against one of the makers thereof for a crime, such note, being entire and indivisible, is void, and there can be no recovery thereon.

6. **CONTRACTS—Illegality of Consideration Not Cured by Ratification.** Where a part of the consideration for an agreement is for the discontinuance of a prosecution for a crime, the ratification of such agreement is opposed to public policy, and cannot be permitted.

6a. Where a contract is void on the ground that it involves the commission or compounding of a crime, there can be no confirmation or ratification of same without it being affected with the original taint. Any subsequent ratification of same between the same parties is illegal.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County.*

Action by E. C. Stanard against Samuel Sampson and wife. Judgment for defendants, and plaintiff brings error. Affirmed.

On the 21st day of July, A. D. 1905, the plaintiff in error, as plaintiff, commenced his action in the lower court against the defendants in error, as defendants, by petition, alleging that on the 28th day of March, A. D. 1905, the said defendants Samuel Sampson, as husband, and Ellen Sampson, as his wife, for a valuable consideration executed and delivered to E. T. Carson and J. T. Dixon their certain promissory note of that date, in the sum of $600, payable on the 10th day of April, A. D. 1905, with interest from maturity at the rate of 12 per cent. per annum, and the additional sum of $100 as attorney's fees should said note be placed in the hands of an attorney for collection; that to secure the payment of said note said defendants executed and delivered to said Carson and Dixon a certain mortgage on the southeast quarter of section 24, township 10 N., range 1 E. of the Indian Meridian, which was duly recorded in the office of the register of deeds of Cleveland county, territory of Oklahoma, in Book 19 of Mortgages at page 159; that said mortgage was a first lien on said premises, and on the 30th day of March, after the execution of said note and mortgage by said defendants, and prior to the maturity thereof, for value paid by the plaintiff to them, the said Carson and Dixon duly assigned to the plaintiff all of their right, title, and interest in and to said note and mortgage, and the said plaintiff is now the

owner of same, and entitled to all the money, or moneys, due thereon, and to have the same foreclosed; that by the terms and conditions of said note and mortgage, when the same became due and payable, in the event that same was not paid at such time, then and there the owner and holder of said note and mortgage should be entitled to the possession of said premises; that said note was not paid at maturity, and that there was then due thereon the said sum of $600, with interest and the attorney's fee; that the other defendants J. O. Blakeney and Willis Jackson have, or claim to have, some interest in and to said premises, but that their interest, if any they have, or either of them, is inferior and subject to the interest 'of the plaintiff. Then follows the prayer for the foreclosure and proper relief.

On the 20th day of July, A. D. 1905, the defendants Samuel Sampson and Ellen Sampson filed their answer to said petition, alleging that they are residents of Cleveland county, Okla., and are husband and wife, and have their residence on the said land as their homestead, but waived all objection to the right of the district court of Oklahoma county to hear, try, and determine said cause, and entered a general appearance therein. They deny that they made their mark to the said note and mortgage, and that the same is their signature, or either of them, that they, or either of them, voluntarily and freely acknowledged the same, and that the said note and mortgage were ever assigned to the plaintiff, or that he is the owner thereof, or that same is a lien on said land, or that the defendants are indebted to the plaintiff in any sum whatever.

They further plead that the defendants are husband and wife, and were living on said land as their homestead, and now so live thereon; that the defendant Samuel Sampson was indebted to one Dixon in the sum of $120, which said Dixon claimed was secured by a chattel mortgage, and that the defendant Ellen Sampson owed nothing whatever thereon, and was in no way liable therefor; that said Dixon, to whom said money was claimed to be due, also claimed that some of the chattel property

described in the mortgage had been made away with, and sent another man by the name of Dixon to arrest the said Samuel Sampson on the charge of disposing of mortgaged property without the written consent of the said mortgagee, Dixon, and caused the said Samuel Sampson to be lodged in jail at Shawnee, at which time and place the plaintiff appeared as counsel for the said defendant; that the said two parties by the name of Dixon did then and there conspire to cheat and defraud the said defendants Samuel Sampson and Ellen Sampson and then and there, with the said debt to Dixon as a basis, added thereto the costs of the said Dixon, who acted as constable, and the attorney's fees for plaintiff, until the amount of said debt was made to be $600; that during this negotiation the defendant Ellen Sampson was in Oklahoma City, and was telegraphed to, to come at once to Shawnee, as her husband was in jail, and in response to said telegram she went to Shawnee, where she was met by her son, who directed her to the store of the said Dixon who held the alleged mortgage debt, and he then and there proposed to her that she join in a mortgage with her husband on their homestead to secure said sum of $600, her husband then being in jail, and said Dixon then and there promised to see that her said husband was released if she would join in the execution of said mortgage. This she then and there declined to do, but offered to try to raise the money actually owing to the said Dixon, and thereupon started to her home, and had gone as far as the depot at Shawnee when she was seized by three armed policemen and carried to jail in Shawnee, and there confined until the next day; that whilst in jail the said Samuel Sampson agreed to sign a note and mortgage in the sum of $600 in order to secure his release; that on the morning after the said Ellen Sampson had been so incarcerated in jail, she was carried as a prisoner to the office of a notary public in Shawnee, and there was presented to her and her husband, whilst they were both still under arrest, a note and mortgage prepared and ready for signature, with the demand that they sign the same or go to the penitentiary; and

that under such threats, and wholly without consideration, said defendants made their marks to what they said was a mortgage and note, and as they were informed the said note and mortgage are the ones on which this action is based; that as soon as said note and mortgage were obtained, the said defendants were released from jail, and no prosecution of either of them was thereafter had for any crime, and in truth and in fact neither of them were guilty of any crime whatsoever, and said arrest and prosecution were wholly without foundation or cause therefor, and was used solely as a means of extorting said note and mortgage from said defendants, and they signed the same for the sole and only reason that they were thus in custody, and as a means of extricating themselves therefrom, and as a means of gaining their liberty, and they did thereby obtain their liberty.

The case went to trial on the 18th day of December, A. D. 1905, before a jury, evidence being introduced by both sides. On the 21st day of December, A. D. 1905, the court instructed the jury on the questions of law, submitting special questions in writing. The jury were instructed to retire to their room for deliberation, and, in addition to their general verdict, to answer said special questions submitted, and to return such answers, together with their general verdict, into court, duly signed by their foreman. On the 26th day of December, A. D. 1905, the jury being unable to arrive at a general verdict, were ordered by the court to return their findings upon the special questions submitted, and were thereupon discharged. All of this was done without any objection or exception on the part of either side.

The special findings of the jury on the questions submitted were as follows: That Samuel Sampson and Ellen Sampson were husband and wife at the time they made their marks to the note and mortgage sued on, and that at said time the land therein described was the homestead of the defendants, who did not owe anything to either W. G. Dixon or the bank at Shawnee at or before the time the note and mortgage in question

were executed; that Ellen Sampson was thrown into jail at Shawnee with a warrant, when she had committed no crime, being incarcerated in said jail, and there held for the purpose of coercing her into signing the note secured by a mortgage on the homestead of herself and husband; that she signed the note and mortgage with an agreement, express or implied from actions and conduct around her, that she and her husband should be released from jail, and the prosecution of her husband stopped, if they would sign said note and mortgage; that Ellen Sampson, after said note and mortgage were executed, and she was released from all restraint, knowingly and intentionally ratified said note and mortgage; that Samuel Sampson, before he had any trouble, was indebted to W. G. Dixon, the merchant, and honestly owed him the sum of $208.77; that said debt to said Dixon was secured by a chattel mortgage; that Samuel Sampson at the same time was indebted to the bank at Shawnee in the sum of $70.50, which debt was secured by a chattel mortgage; that said debts were placed in the hands of one L. P. Dixon by the merchant,. W. G. Dixon, and the bank, for collection by the collector, L. P. Dixon, as agent; that the said L. P. Dixon did not carry Samuel Sampson to Oklahoma City and hold him in restraint there; that the said L. P. Dixon carried Samuel Sampson to Shawnee; that the said L. P. Dixon commenced criminal prosecution against Samuel Sampson, not for the honest purpose of enforcing the criminal law; that the said L. P. Dixon commenced said criminal prosecution not as a means of forcing Samuel Sampson to give the note and mortgage sued on; that Samuel Sampson was arrested under said warrant, and incarcerated in jail at Shawnee; that there was an agreement, either express or implied, that if Samuel Sampson and his wife would give a note secured by a mortgage on the land, the criminal prosecution then pending against Samuel Sampson would be dismissed or discontinued, and he would be turned free; that said agreement entered into the consideration that moved Samuel Sampson to execute the note and mortgage sued on in this ac-

tion; that said inducement was held out to Sampson before he executed the note and mortgage, and was also held out by L. P. Dixon or agreed to by him; that after the note and mortgage were executed, Samuel Sampson was released from arrest, and the criminal prosecution against him no further prosecuted; that the plaintiff, Stanard, knew what was being done with the defendants from the time of their arrest until they were released; that Samuel Sampson did not owe anything to said L. P. Dixon; that in figuring up the amount as to the $600 note involved in this action, the sum of $110 included therein was paid to said L. P. Dixon; that the sum of $100, also included therein, was paid to Ellen Sampson at the time the note and mortgage were signed; that at the time she signed said note and mortgage she was an illiterate, uneducated person, but that she knew what she was doing; that Samuel Sampson agreed with Carson and Dixon that they should pay the debts owed by Sampson to the merchant, Dixon, and the bank out of the proceeds of the $600 note; that Ellen Sampson agreed with Carson and Dixon that they should pay the debts owed by Samuel Sampson to the merchant Dixon and the bank out of the proceeds of the $600 note; that there was an agreement, expressed or implied, that if Samuel Sampson and his wife would execute the note and mortgage, and raise the money thereon and pay Samuel Sampson's debts to the bank and the merchant Dixon, and their fees, that he would be released, and the criminal prosecution against him discontinued or no further prosecuted; that this agreement not to prosecute was one of the considerations that entered into the making of said note and mortgage by Samuel Sampson; that the said L. P. Dixon and the said merchant, W. G. Dixon, were parties to this agreement, and that the plaintiff was either a party to said agreement or had knowledge thereof.

The foregoing were answers to the special questions submitted on request of counsel for the defendants. The following questions were submitted on request of defendants' counsel, but not answered:

"(7) Would Ellen Sampson have signed said note and mortgage if she had been left to the exercise of her free will? Answer. ——. (9) Do you find that Ellen Sampson was held under restraint and against her will at the time she signed the said note and mortgage? Answer. ——. (10) Do you find that she signed the said note and mortgage as a means of gaining her liberty and freedom from restraint? Answer. ——. (28) If Samuel Sampson had been free to execute his own will, would he have executed the note and mortgage in suit? Answer. ——. (32) Do you find that plaintiff Stanard acted with and in connection with Collector Dixon in doing what he did to force the defendants to execute the note and mortgage in suit? Answer. ——. (33) Do you find that the loan men, Carson and Dixon, or either of them, knew, or had good reason to know, that the defendants were held under arrest, and being compelled to sign the note and mortgage, or were not signing it of their own free will, before they parted with their money? Answer. ——. (34) Do you find that the circumstances and conditions were such, while the defendants were in the loan office of Carson and Dixon, before the note and mortgage were signed, and the money paid over thereon, as to put them, as reasonable men, on inquiry as to whether or not the defendants were acting freely and of their own free will? Answer. ——. (35) If you answer the last question by yes, then if reasonable inquiry had been made, would Carson or his partner, Dixon, have been able to learn as to whether the defendants were under arrest or acting of their own free will? Answer. ——. (36) How much do you find that the defendant Sampson owed to the merchant, Carson, at the time the mortgage was executed? Answer. ——. (37) How much do you find that he owed the bank? Answer. ——."

The following answers were made to special questions submitted on request of counsel for the plaintiff: That the land covered by the mortgage in this case was the home and place of residence of the defendants Ellen and Samuel Sampson at the time the mortgage was executed; that E. C. Stanard, the herein plaintiff, was the acting attorney for Samuel Sampson in the matter of the collection of the mortgages in L. P. Dixon's hands for collection; that Samuel Sampson and Ellen Sampson directed the payment and disbursement of the money, or a part

thereof, the proceeds of the mortgage in this case; that Samuel Sampson did not agree to pay L. P. Dixon, the collector, his fees and expenses in the sum of $110, or any other sum; that Samuel Sampson neither accepted nor received any part of the money, the proceeds of said mortgage; that Ellen Sampson accepted and received a part of the money, the proceeds of said mortgage.

When the jury filed into open court with their special findings, they were called, and, all of the jurors being present, each of the interrogatories were read in the presence and hearing of the jurors, and after such interrogatories were read in their presence and hearing, the jurors were asked by the trial court if the answer written by them immediately following each interrogatory was their finding, and each of the jurors answered in the affirmative. Each and every interrogatory was so read to the jury, and the same question asked after the reading of each interrogatory and the same answer given. Thereupon the special findings were received by the court and ordered recorded, and the jury discharged, without any objection or exception being taken by either side.

*Harrison Wilson* and *Milton Bryan,* for plaintiff in error. *J. L. Brown,* for defendants in error.—

Necessity of motion for new trial to warrant review in Supreme Court—Waiver of objections to verdict; *Carson v. Butts,* 4 Okla. 133; *City of Atchison v. Burns,* 22 Kan. 65; *Nesbit v. Hines,* 17 Kan. 318; *Arthur v. Wallace,* 8 Kan. 271; *Long v. Duncan,* 10 Kan. 239.

Failure of foreman to sign verdict—Waiver of objection: *Wilson v. Pupham* (Tex.) 15 S. W. 860; *Moaks v. Mory,* 39 Ind. 103; *Morris v. Overton,* 20 Iowa, 465; *Ry. Co. v. Kempton,* 153 Ind. 618.

Contract tainted with illegal consideration — Discontinuance of criminal prosecution: *Sumner v. Summers,* 54 Mo. 340; *McCoy v. Green,* 83 Mo. 632; *Cheltenham Co. v. Cook,* 44 Mo. 29; *Fosdick v. Van Arsdale et al.,* 74 Mich. 302; *Anustoy v.*

*Electric Co.,* 95 Cal. 311; *Friend v. Miller,* 52 Kan. 139; *Budd v. Rutherford,* 4 Ind. App. 386.

WILLIAMS, C. J. (after stating the facts as above). (1) The court having submitted 47 special issues or specific questions of fact to the jury (6 requested by the plaintiff and 41 by the defendants) with instructions, in addition to their general verdict, to make findings thereon, the jury, reporting that they were unable to agree on a general verdict, were further instructed, without objection by either side, to return their answers to the special issues or specific questions of fact submitted; the plaintiff and defendants both filing motions for judgment on such findings for their respective sides; the court rendering judgment thereon in favor of the defendants; the same not having been assigned as error by a motion for a new trial—on review in this court will the general verdict be treated as having been waived?

(2) The jury having answered all of the specific questions submitted on request of the plaintiff and defendants, except 6 by the latter, all of which related to the issue of duress, except 1, possibly relating to both issues raised by the pleadings as to duress and illegality; all of the other questions submitted by the defendants relating to the issue of illegal consideration—if the special findings of the jury as returned constituted a complete defense to the note, can the failure to answer the other 6 questions of the defendants avail the plaintiff on review here?

(3) The jury not having returned a general verdict, but answers to specific questions, and the plaintiff having presented and filed a motion for judgment on such answers, which was denied, in the absence of the fact of the jury not returning a general verdict being timely objected to, with proper exceptions, and being assigned as error in a motion for a new trial, can same be reviewed on a petition in error?

(4) The answers to the special questions returned into open court, each question, and the answer thereto, *seriatim* being read by the clerk to the jury, and inquiry made whether

or not such was their answer thereto, and no disagreement being expressed, but on the contrary every juror affirmatively answering that the same was his and their answer; neither party complaining of the form of the answers or questions, or that same had not been signed by the foreman, nor requesting that the same be signed; such answers being then and there received and ordered recorded, and the jury discharged, without objection or exception; and the same not having been assigned as error in a motion for a new trial—will the signing of the same by the foreman be treated on review in this court as having been waived?

(5)    The husband having been arrested and incarcerated in jail on the charge of having committed the crime of disposing of mortgaged property, and his wife, who had committed no crime, having been also apprehended and incarcerated in jail for the purpose of coercing her into executing a note and mortgage on their homestead, to secure the indebtedness on account of which he had been arrested; when they have executed a note and mortgage on said homestead covering and securing said indebtedness, and the expenses accruing as a result of attempting to collect the same, and an additional $100 paid to the wife as a partial consideration for her joining in such mortgage, together with the additional consideration that she and her husband should be released from jail, and the prosecution against her said husband discontinued—are said note and mortgage void?

(6)    Such note and mortgage having been executed and delivered to the plaintiff, and the said husband, Samuel Sampson, and his wife, Ellen Sampson, released from their incarceration; the consideration being to cover an indebtedness to W. G. Dixon in the sum of $208.77, the bank in the sum of $70.50, and $110 to be paid to L. P. Dixon as the agent of the said W. G. Dixon and said bank, and $100 paid to Ellen Sampson, the wife of her codefendant, Samuel Sampson, when she signed same, making the sum total of $489.27; the additional consideration being the release of the said Samuel Sampson and his wife, Ellen Sampson

from their detention in jail and the discontinuance of the criminal prosecution against the said Samuel Sampson—could such parties, after their release from jail, without any additional consideration, ratify such illegal contract so as to make it become valid and binding upon them, or either of them?

1.    Section 4473, Wilson's Rev. & Ann. St. 1903, provides that:

"In all cases the jury shall render a general verdict, and the court shall in any case at the request of the parties thereto, or either of them, in addition to the general verdict direct the jury to find upon particular questions of fact, to be stated in writing by the party or parties requesting the same."

The plaintiff was entitled to have a general verdict returned; but, when he sat by, and permitted the general verdict to be dispensed with, and the answers to be returned into open court to the specific questions submitted, and to be recorded, without any objection, and afterwards filed a motion for judgment in his favor thereon, he cannot be permitted by such conduct to induce the court to commit an irregularity, and then speculate upon its result by seeking a judgment thereon in his favor, and be heard here on petition in error to complain, especially when there was no motion for a new trial filed and presented in the lower court seeking the correction of such alleged error. *Young v. Stickney,* 46 Or. 104, 79 Pac. 346; *Seybold v. Terre Haute & Indianapolis R. R. Co.,* 18 Ind. App. 378, 46 N. E. 1054; *Taft v. Baker,* 2 Kan. App. 601, 42 Pac. 502; *Washington Nat. Bank v. Woodrum,* 62 Kan. 867, 62 Pac. 672.

2.    In the case of *Ritchie v. K., N. & D. Ry. Co.,* 55 Kan. 48, 39 Pac. 721, the court said:

"All it is necessary to determine in this connection is whether the court may review the conclusions of law and judgment, based on the conclusions of fact, found by the trial court. The conclusions of fact stand as the result and final determination of the issues of fact in the case; and, where no new trial is asked by either party, where no motion is made to set aside such findings of fact, or any of them, they stand as the facts in the case. They supersede the averments of the pleadings, at least so far as they

are consistent with the issues properly triable. They eliminate whatever false averments and claims have been made by either party, and present to the trial court the basis of fact on which arise the issues of law. They stand as a statement of facts similar, if not in all respects identical, with the statements of a petition challenged by demurrer, or an agreed statement of facts, or special verdict of a jury, as to the legal effects and consequences of which issues of law arise, are argued and determined by the court."

In the case of *Board of County Commissioners v. Porter et al.* 19 Okla. 173, 92 Pac. 152, the court held that where a case is submitted to the court solely upon the pleadings and an agreed statement of facts, a motion for a new trial is not required; the decision involving only a question of law. When all questions of fact have been eliminated, the court determines the issues of law thereon, and no necessity exists under the statute for a motion for a new trial to be filed in the trial court to have reviewed the judgment rendered on the facts found. *Noble v. Harton,* 6 Kan. App. 825, 49 Pac. 794; *Sheets v. Henderson* (Kan.) 93 Pac. 577; *Osborne v. Young,* 28 Kan. 769; *Horn v. Newton City Bank,* 32 Kan. 518, 4 Pac. 1022; *Lender v. Caldwell,* 4 Kan. 339; *Coburn v. Weed,* 12 Kan. 182; *Holcomb v. Dowell,* 15 Kan. 379; *St. L. & S. F. Ry. Co. v. Shoemaker,* 38 Kan. 723, 17 Pac. 584; *Stettauer v. Carney,* 20 Kan. 474; *Stapleton v. Orr,* 43 Kan. 170, 23 Pac. 109; *Windmill Co. v. Buchanan,* 46 Kan. 314, 26 Pac. 708; *Commissioners of Wyandotte Co. v. Arnold,* 49 Kan. 279, 30 Pac. 486.

The jury having returned their answers to the specific questions submitted, and no motion for a new trial having been filed for the re-examination of the facts, or to set such findings aside, the only question then left for the trial court was to render judgment on the facts as found, and if under the pleadings they support the judgment as rendered, on review in this court the same will not be disturbed.

3. In the case of *Citizens' Bank v. Bolen et al.,* 121 Ind. 304, 23 N. E. 146, Mr. Justice Berkshire, in speaking for the court, said:

"If the verdict or finding does not cover all the issues in the case, or all the material facts involved in any of the issues, the remedy is by a motion for a new trial. * * *"

Where any one of the findings in a special verdict is not specific and certain, either party may require that it be made so before the jury is discharged. *Kansas-Pacific Ry. Co. v. Pointer,* 14 Kan. 51. In the case of the *Hazard Powder Co. v. Viergutz,* 6 Kan. 471 (1st Ed. p. 488) Mr. Chief Justice Kingman, speaking for the court, said:

"The ninth finding of fact is only by itself responsive to a portion of the question. It does not state what were the terms of the sale, and this was embraced in the question submitted. To this objection two answers may be given: First, the questions were submitted at the request of the plaintiff. If they were not full and sufficient answers, he should have asked that the jury be directed to make more perfect answers, and the defect would have been cured without the cost of another trial. *Blackley v. Sheldon,* 7 Johns. (N. Y.) 32."

The motion by plaintiff for judgment is, in part, as follows:

"That said special findings of the jury show a state of facts, as found by the jury, such as to entitle the plaintiff to a judgment against said defendants, and each of them, as prayed for in his petition heretofore filed in this cause."

The unanswered questions were submitted at the instance of the defendants. The plaintiff, having made no objection to the jury being discharged before said questions were answered, cannot be heard here to complain; and, had the defendants desired said questions answered, it was their duty to have then objected. In the case of *Seybold v. Terre Haute & Indianapolis R. R. Co.,* 18 Ind. App. 378, 46 N. E. 1058, Judge Black, in delivering the opinion of the court, said:

"It is well settled that when a party moves for judgment in his favor on a special verdict, and excepts to the overruling of his motion, or where a party excepts to the action of the court in rendering judgment upon a special verdict for his adversary, he thereby admits, so far as such action of the court is concerned, that the special verdict states the facts fully and correctly. * * *"

Section 4493, Wilson's Rev. & Ann. St. 1903, provides that "the former verdict, report or decision shall be vacated and a new trial granted upon the application of the party aggrieved, for irregularity in the proceedings of the court, jury, referee or prevailing party, or any order of the court or referee, or abuse of discretion by which the party was prevented from having a fair trial." In the case of *Halloway v. McIntosh,* 7 Kan. App. 34, 51 Pac. 963, the court said:

"It cannot be said that the court was guilty of any irregularity in not doing something to which its attention was not in any manner challenged, and therefore the failure to appoint a guardian was not an irregularity upon which to base a motion for a new trial."

In the case of *Arthur v. Wallace,* 8 Kan. 267, Mr. Justice Brewer, in delivering the opinion of the court, said:

"Then a motion for a new trial was filed, alleging as one reason therefor 'that the jury refused or neglected to find the special questions of fact as directed by the court.' We think this objection came too late. Whatever may be the rule where the jury wholly ignore the special questions submitted, we think that, when they attempt an answer, and the only objection that can be made is that it is not sufficiently full, attention should be called to the deficiency when the verdict is returned, and an opportunity given to make it more full and specific."

In the case of *Clark v. Imbrie,* 25 Kan. 424, the late Chief Justice Horton, speaking for the court, said:

"As no 'errors of law occurring at the trial' were stated in such motion, and as the only error complained of is one alleged to have occurred at the trial, such error was waived. Having been waived in the trial court, it cannot now be considered as any reason for the reversal of the judgment.".

It is settled by a long line of decisions, both in the territory of Oklahoma, and also in Kansas, that errors of law occurring at the trial cannot be considered by the Supreme Court, unless a motion for a new trial, founded upon and including such errors, has been made and overruled. *Nesbit v. Hines,* 17 Kan. 316; *Atchison v. Byrnes,* 22 Kan. 65; *Decker v. House,* 30 Kan. 614, 1 Pac. 584; *Wilson v. Kestler,* 34 Kan. 61, 7 Pac. 793; *Buet-*

*tinger v. Hurley et al.,* 34 Kan. 585, 9 Pac. 197; *McNally v. Keplinger,* 37 Kan. 556, 15 Pac. 534; *Longfellow v. Smith,* 10 Kan. App. 575, 61 Pac. 875; *Hardwick et al. v. Atkinson,* 8 Okla. 609, 58 Pac. 747; *De Berry v. Smith,* 2 Okla. 1, 35 Pac. 578; *Wood v. Farnham,* 1 Okla. 375, 33 Pac. 867; *Vaughn L. Co. v. Mo. H. & L. Co.,* 3 Okla. 174, 41 Pac. 81; *Carter et al., v. Mo. M. & L. Co.,* 6 Okla. 11, 41 Pac. 356; *Beberstein v. Territory,* 8 Okla. 467, 58 Pac. 647; *Boyd et al., v. Bryan et al.,* 11 Okla. 56, 65 Pac. 940; *McDonald v. Carpenter,* 11 Okla. 115, 65 Pac. 942; *City of Enid v. Wigger,* 15 Okla. 511, 85 Pac. 697. Neither any objection being made and exceptions reserved at the time, nor motion for a new trial having been filed and presented in the court below, the plaintiff waived his right to have such alleged error reviewed in this court.

4. Section 4471, Wilson's Rev. & Ann. St. 1903 (section 4174, St. 1893), provides that:

"The verdict shall be written, signed by the foreman, and read by the clerk to the jury, and inquiry made whether it is their verdict. If any juror disagrees the jury must be sent out again; but if no disagreement be expressed, and neither party requires the jury to be polled, the verdict is complete and the jury discharged from the case. If, however, the verdict be defective in form only, the same may, with the assent of the jury, be corrected by the court."

In the case of *City of Kingfisher v. Altizer,* 13 Okla. 127, 74 Pac. 109, the court, in construing this section, said: "The answers to the special interrogatories submitted by the defendant and returned by the jury were not signed, and therefore constitute no part of the verdict, and cannot be considered for any purpose"— and cited the cases of *Greenberg v. Hoff,* 80 Cal. 81, 22 Pac. 69, and *Sage et al. v. Brown,* 34 Ind. 464. *In Re City of Kingfisher v. Altizer, supra,* it does not appear whether or not any objection was made to receiving the answers to the special interrogatories because no general verdict accompanied same. or that the answers were not signed by the foreman, or on any other ground, or that any request was made that the same be signed by the foreman. Nor was the question there considered as to whether or not it was

necessary to assign such alleged error 'as a ground for a new trial, in order to have same reviewed on petition in error.

In the case of *Sage et al. v. Brown,* 34 Ind. 469, the court said:

"It is not necessary for us to decide in this case, and we do not decide, how far the consent of the parties can dispense with the requirements of the statute that the verdict of the jury should be returned into open court. But it is evident that when the parties, in the case under consideration, consented that the verdict might be sealed up and delivered to the clerk of the court, it was with the understanding that the general and special verdicts should be reduced· to writing and signed by the foreman. This 'was not done; and, in our judgment the consent given can not be regarded as a waiver of the performance of such acts as were necessary to the validity of the verdict. The effect of the agreement was that when the verdict was reduced to writing and signed by the foreman, it might be delivered to the clerk of the court, and he should open the verdict in court, without the presence of the jury. The jury having been discharged, their functions as such had ceased, and the court had no power to reassemble them. It was the duty of the court to have awarded a venire *de novo.* The court erred in overruling the motion for a new trial, and for this error the cause must be reversed."

The California case cited seems to hold that such provision is mandatory, and unless the verdict is signed, it is absolutely void. But so far as we have been able to find, it stands solitary and alone. In the case of *Northern Pacific R. R. Co. v. Urlin,* 158 U. S. 277, 15 Sup. Ct. 842, 39 L. Ed. 977, Mr. Justice Shiras, in delivering the opinion of the court, said:

"The contention that the judgment below was invalid because the verdict of the jury was not signed by the foreman, as required by a section of the Code of Montana, is, in our opinion without merit. The record discloses that when the verdict was rendered, at the request of the defendant, the jury was then and there polled by the clerk, and each of said jurors answered that the verdict as read was theirs, whereupon the plaintiff moved for judgment in accordance with said verdict; the motion was granted, and judgment was ordered accordingly. No objection was made or request that the verdict should be signed was then made by the defendant, and we think that the court below was

justified in treating the irregularity, if such it were, as having been waived."

The settled weight of authority supports the rule announced by the Supreme Court of the United States in the above case which was the controlling tribunal as to the decisions of the Supreme Court of the territory of Oklahoma at the time the decision was rendered in the case of the *City of Kingfisher v. Altizer, supra. Curley et al. v. O'Dwyer,* 61 Mo. App. 349; *Morrison v. Overton,* 20 Iowa, 465; *Patterson v. Murphy,* 63 Ga. 281; *Burton v. Bondies,* 2 Tex. 203; *Hardy v. State,* 19 Ohio St. 579; *Berry v. Pusley,* 80 Ky. 166. We conclude that had objection been made to the receiving of the answers, on the ground that they were not signed by the foreman, or had request been made that the same be signed, and the court had overruled such objection or denied such request, in either event it would have been error; that answers to special interrogatories submitted to and returned by the jury not signed, over the timely objection of either party, cannot be considered as constituting a part of the verdict, and cannot legally be considered for any purpose. But when neither objection to the receiving of the same unsigned, nor any request that the same be signed, is made, the plaintiff waived the right to complain of such alleged error in this court. Had the plaintiff made timely objection, but failed to assign such objection as error in a motion for a new trial, as to whether or not such objection could avail on review in this court is not now before us for determination.

5. In the case of *Wadsworth v. Dunnam,* 117 Ala. 670, 23 South. 702, the late Chief Justice Brickell, in delivering the opinion of the court, said:

"The doctrine of the common law, as it is laid down in the text-books, and supported by numerous adjudications, is that, 'if any part of the entire consideration for a promise, or any part of an entire promise, is illegal, whether by statute or at common law, the whole contract is void. Indeed the court go far in refusing to found any rights upon wrongdoing.' 1 Parsons on Contracts, 456; 1 Parsons, Notes & Bills, 217; 1 Dan. Neg. Ins., sec. 196; Story, Prom. Notes, § 189; Bishop on Contracts, §

471; *Clark* on Contracts, 472; 1 Smith Lead. Cases (8th Ed.) 736; *Carrington v. Caller,* 2 Stew. (Ala.) 175; *Pettit v. Pettit,* 32 Ala. 308; *Wynne v. Whisenant,* 37 Ala. 46; *Patton v. Gilmer,* 42 Ala. 548, 94 Am. Dec. 665; *Cotton v. McKenzie,* 57 Miss. 418; *Widoe v. Webb,* 20 Ohio St. 431, 5 Am. Rep. 664; *Deering v. Chapman,* 22 Me. 488, 39 Am. Dec. 592; *Kidder v. Blake,* 45 N. H. 530."

In notes, where the consideration includes items which involve the violation of the law, and other items having no connection with an illegal or forbidden act, the transaction involving those items being legal, when they are blended and a note taken for the whole, the same is indivisible, and there can be no recovery upon it. *Cotton v. McKenzie,* 57 Miss. 418; *Widoe v. Webb,* 20 Ohio St. 431, 5 Am. Rep. 664; *Kidder v. Blake,* 45 N. H. 530. If there be items in an account closed by a note not tainted with illegality, unconnected with an illegal transaction or prohibited act, action may be maintained on the original contract, though a new note had been taken therefor; but the note if tainted with illegality, is utterly void, incapable of discharging a just indebtedness. A note and mortgage, executed and delivered by the mortgagor to the mortgagees with an express understanding therefor that a prosecution for a felony shall be discontinued, is void and not enforceable. *Sumner v. Summers,* 54 Mo. 343; *McCoy v. Green,* 83 Mo. 632; *Chellenham Fire Brick Co. v. Cook,* 44 Mo. 29; *Collins v. Blantern,* 2 Wils. 341; *Fosdick v. Van Arsdale et al.,* 74 Mich. 302, 41 N. W. 932; *Amestoy v. Electric Rapid Transit Co.,* 95 Cal. 311, 30 Pac. 550; *Friend et al. v. Miller,* 52 Kan. 139, 34 Pac. 398, 39 Am. St. Rep. 340; *Budd v. Rutherford,* 4 Ind. App. 386, 30 N. E. 1112. Under the special answers returned by the jury in this case, as a part of the consideration of this note the criminal prosecution pending against Samuel Sampson for disposing of mortgaged property was to be discontinued, and it is therefore void.

6.   The further question arises, however, in view of the fact that the jury found that, after the defendants were released from

jail, and the note and mortgage had been signed and delivered, and the $100 was received by Mrs. Sampson, she and her husband thereafter ratified this note and mortgage. whether or not such a contract could be ratified. In the case of *Earl of Chesterfield v. Sir Abraham Janssen,* 1 Atk. 354 (Eng. Rep. Full Reprint, vol. 26, Chancery Book 6, p. 226), the Earl of Hardwicke, as Lord Chancellor of the High Court of Chancery, said:

"If the first bond had been void at law, no new agreement would have made it better. The original corruption would have infected it throughout. But as bargains that are not cognizable at law are properly the subject of this court's consideration, new agreements and new terms may confirm what might otherwise have admitted a question as to the fairness of it."

In the case of the *Earl of Chesterfield v. Sir Abraham Janssen,* 2 Ves. Sr. 159 (Eng. Rep., Full Reprint, Vol. 28, Chancery Book 8, p. 102), the Lord Chancellor said:

"Had the first bond been void by the statutes of usury, no new engagement would have made it better. The original would have infected it. But if a man is fully informed, and with his eyes open, he may fairly release, and come to a new agreement, and bar himself of relief, which might be had in this court."

In the case of *McHugh v. County of Schuylkill,* 67 Pa. 395, 5 Am. Rep. 445, the court said:

"From the answers to the defendant's points, and the charge of the court, the learned judge appears' to have instructed the jury that if the plaintiff subsequently approved and acquiesced in this void act, or ratified it, or subsequently approved of it, then the bond was binding upon him. No new consideration of any kind was either alleged or pretended, and the cases of *Duncan v. McCullough,* 4 Serg. & R. (Pa.) 483, *Chamberlain v. McClurg,* 8 Watts & S. (Pa.) 31, 36, *Goepp's Appeal,* 3 Harris (Pa.) 428, show clearly that under the circumstances the act simply retains its original character, and is entirely void."

In the case of *Shisler v. Van Dike,* 92 Pa. 449, 37 Am. Rep. 702, the court said:

"Where the fraud is of such character as to involve a crime, the ratification of the act from which it springs is opposed to public policy, and hence cannot be permitted, but where the

transaction is contrary only to good faith and fair dealing; where it affects individual interest, and nothing else, ratification is allowable. It is indeed conceded, in the cases last above cited, that if the original contract be illegal, or void for want of consideration, no subsequent ratification will help it."

In the case of *Shelton v. Marshall*, 16 Tex. 344, the court held that when an original contract is prohibited and an offense at law, any subsequent contract which carries it into effect is also illegal, and whenever, in cases of this character, the subject-matter of the contract can be traced back, between privies, to such an original illegal contract, the substituted security is void; and, even if the parties liable in the last security were not privy to the illegal bargain, the same result has been held to prevail, if the true destination of such security was to secure a bargain, made by others, for the use of him who was to reap the fruits of the bargain. In the case of *Armstrong v. Toler*, 11 Wheat. 258, 6 L. Ed. 468, Mr. Chief Justice Marshall, in delivering the opinion of the court, said:

"Questions upon illegal contracts have arisen very often, both in England and in this country, and no principle is better settled than that no action can be maintained on a contract, the consideration of which is either immoral in itself or prohibited by law. How far this principle is to affect subsequent contracts, the direct and immediate consideration of which is not immoral or illegal, is a question of considerable intricacy, on which many controversies have arisen and many decisions have been made."

It is settled by the overwhelming weight of authority that where a contract is illegal, on account of involving the commission of a crime, such contract cannot thereafter be ratified. But where the act is one of conscience—one of fraud between individuals, and not an offense against the state or organized society—that question is not presented in this record.

Failing to find any reversible error, the judgment of the lower court is affirmed.

All the Justices concur.